# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

MARTIN ROSS,

        Petitioner,      :      Case No. 3:22-cv-003

- vs -                           District Judge Thomas M. Rose
                                        Magistrate Judge Michael R. Merz

JENNY HILDEBRAND, Warden,
  London Correctional Institution,

                                        :
        Respondent.

## DECISION AND ORDER GRANTING *IN FORMA PAUPERIS* STATUS AND DENYING MOTION FOR APPOINTMENT OF COUNSEL; REPORT AND RECOMMENDATIONS

       This habeas corpus case, brought *pro se* by Petitioner Martin Ross, is before the Court for initial review under Rule 4 of the Rules Governing § 2254 Cases.  Noting that the Petitioner is incarcerated, the Court *sua sponte* grants him leave to proceed *in forma pauperis*.

       Petitioner moves for appointment of counsel to assist him in this case (ECF No. 1).  This Court's Criminal Justice Act Plan provides for the appointment of counsel only in cases where an evidentiary hearing is required; Congress has not appropriated sufficient funds to allow appointment in other cases unless the petitioner has been sentenced to death.  Accordingly, the Motion to Appoint Counsel is denied.

       Under Rule 4, the clerk must promptly forward a habeas corpus petition when filed to a judge under the court's assignment procedure, and the judge must promptly examine it.  If it plainly

1

appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner.  All habeas cases filed at Dayton are randomly assigned to one of the three resident District Judges and then referred by Amended General Order DAY 21-02 to the undersigned for a report and recommendation.

The Petition avers that Ross was convicted in the Montgomery County Court of Common Pleas of aggravated burglary, kidnapping, and rape of a person under the age of thirteen (Petition, ECF No. 2, PageID 3).  After conviction in a bench trial, Ross appealed to the Ohio Second District Court of Appeals which affirmed his conviction.  *State v. Ross,* 2020-Ohio-6958 (Ohio App. 2nd Dist. Dec. 30, 2020).  The Supreme Court of Ohio declined to exercise jurisdiction over a subsequent appeal.  *State v. Ross*, 163 Ohio St. 3d 1418 (2021).  The Petition avers that Ross has filed no other collateral attacks on his conviction.  Because he has filed within one year and ninety days of his conviction's becoming final, it appears the Petition is timely under 28 U.S.C. § 2244(d).

## Analysis

Ross pleads two grounds for relief which are analyzed below.

**Ground One:  Convictions Against the Manifest Weight of the Evidence**

> **Ground One**: Ross argues, first that the trial court found him guilty contrary to the manifest of the evidence because "[T]here were several inconsistencies in the testimony that [raised] reasonable doubt about [His] guilt, "and because the court "lost [its] way [in interpreting the] DNA evidence".

2

(Petition, ECF No. 2, PageID 7).

This Court cannot reach the merits of Ground One because a manifest weight claim does not state a claim upon which habeas corpus relief can be granted. Federal habeas corpus is available only to correct federal constitutional violations. 28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). A manifest weight of the evidence claim is not a federal constitutional claim, but arises only under state law. *Johnson v. Havener*, 534 F.2d 1232 (6th Cir. 1986).

Ground One should be dismissed for failure to state a claim upon which habeas relief can be granted.

**Ground Two: Insufficient Evidence of Rape**

In his Second Ground for Relief, Ross argues that there was insufficient evidence to convict him of rape.

> **Ground Two**: Second, Ross argues that the evidence was insufficient to prove that "anal intercourse took place or that anything was inserted into [L.W.'s] Anal Opening." Appellant's Brief 10. Also the defendant argues that he was denied his rights to Due Process of law under the Ohio and United States Constitutions if he is convicted on insufficient evidence.

(Petition, ECF No. 2, PageID 9).

Unlike Ground One, Ground Two does state a claim which, if proved, would warrant habeas corpus relief. An allegation that a verdict was entered upon insufficient evidence states a claim under the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358 (1970);

3

*Johnson v. Coyle*, 200 F.3d 987, 991 (6th Cir. 2000); *Bagby v. Sowders*, 894 F.2d 792, 794 (6th Cir. 1990)(en banc).

In order for a conviction to be constitutionally sound, every element of the crime must be proved beyond a reasonable doubt. *In re Winship*, 397 U.S. at 364.

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt . . . . This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence and to draw reasonable inferences from basic facts to ultimate facts.

*Jackson v. Virginia*, 443 U.S. at 319; *Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (quoting *Jackson*). This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* (quoting *Jackson*, 443 U.S. at 324). This rule was recognized in Ohio law at *State v. Jenks*, 61 Ohio St. 3d 259 (1991). Of course, it is state law which determines the elements of offenses; but once the state has adopted the elements, it must then prove each of them beyond a reasonable doubt. *In re Winship, supra.*

In cases such as Petitioner's challenging the sufficiency of the evidence and filed after enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (Pub. L. No 104-132, 110 Stat. 1214)(the "AEDPA"), two levels of deference to state decisions are required:

> In an appeal from a denial of habeas relief, in which a petitioner challenges the constitutional sufficiency of the evidence used to convict him, we are thus bound by two layers of deference to groups who might view facts differently than we would. First, as in all sufficiency-of-the-evidence challenges, we must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). In doing so, we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury. See *United States v. Hilliard*, 11 F.3d 618, 620 (6th

> Cir. 1993). Thus, even though we might have not voted to convict a defendant had we participated in jury deliberations, we must uphold the jury verdict if any rational trier of fact could have found the defendant guilty after resolving all disputes in favor of the prosecution. Second, even were we to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, we must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable. See 28 U.S.C. § 2254(d)(2).

*Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). In a sufficiency of the evidence habeas corpus case, deference should be given to the trier-of-fact's verdict under *Jackson v. Virginia* and then to the appellate court's consideration of that verdict, as commanded by AEDPA. *Tucker v. Palmer*, 541 F.3d 652 (6th Cir. 2008); *accord Davis v. Lafler,* 658 F.3d 525, 531 (6th Cir. 2011)(en banc); *Parker v. Matthews*, 567 U.S. 37, 43 (2012). Notably, "a court may sustain a conviction based upon nothing more than circumstantial evidence." *Stewart v. Wolfenbarger,* 595 F.3d 647, 656 (6th Cir. 2010).

Ross pleaded his insufficiency of the evidence claim as his Second Assignment of Error on appeal and the Second District decided it as follows:

> {¶ 7} Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the * * * verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based on the sufficiency of the evidence, the "'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.
>
> * * *
>
> {¶ 10} In this case, the trial court convicted Ross for aggravated burglary, kidnapping and rape of a person under 13 years of age. To prove Ross guilty of aggravated burglary, the State had to present

5

evidence showing that: (1) Ross trespassed by force, stealth or deception into L.W.'s residence; (2) at least one person, other than an accomplice of Ross, was in the residence at the time; and (3) Ross inflicted physical harm on L.W. See R.C. 2911.11(A)(1). To prove Ross guilty of kidnapping, the State had to present evidence showing that: (1) Ross restrained L.W.'s liberty; (2) Ross's purpose was to engage in sexual activity with L.W. against her will; and (3) L.W. was less than 13 years old at the time. See R.C. 2905.01(A)(4). To prove Ross guilty of rape of a person under 13 years of age, the State had to present evidence showing that: (1) L.W. either was not Ross's spouse, or was his spouse but did not reside with him; (2) Ross engaged in sexual conduct with L.W.; and (3) at the time the sexual conduct occurred, L.W. was less than 13 years old, whether or not Ross knew as much. See R.C. 2907.02(A)(1)(b).

* * *

{¶ 12} L.W. testified that Ross held her down and threatened her to compel her to stay silent. Transcript Vol. I, 108:19-111:3. Furthermore, L.W.'s testimony established that Ross engaged in sexual conduct with her against her will, and that at the time, she was less than 13 years old.[2] Id. at 94:7-94:17 and 109:18-110:20. In addition, an expert witness testified that a DNA sample recovered from L.W.'s underwear "matche[d] back to Martin Ross." Transcript Vol. III, 14:5-15:25. This evidence sufficed to show Ross's guilt with respect to each of the elements of kidnapping.

{¶ 13} Given that L.W. was less than 13 years old, she could not legally have been married, meaning that she could not have been Ross's spouse as a matter of law. R.C. 3101.01-3101.02. The evidence, then, sufficed to show Ross's guilt with respect to each of the elements of rape of a person under 13 years of age.

* * *

{¶ 21} Next, Ross criticizes the trial court's consideration of the DNA evidence obtained from L.W.'s underwear. In Ross's view, the "trial court asked questions [of the expert witness who testified regarding the DNA evidence] and went from [Ross] 'cannot be excluded' as a possible contributor [to the sample analyzed by the expert] to only [Ross or Ross]'s identical twin could have left the DNA." Appellant's Brief 8. That is, Ross faults the trial court for purportedly misunderstanding the expert's testimony. The expert testified that

6

> [a]t [her] laboratory, [she and her colleagues] are very conservative in [their] wording. Anytime [they] state that [they] cannot exclude [a specific person as the source of a given sample], it means that [they] are, in fact, seeing [that person's] DNA present [in] that [sample]. Only, to be conservative, rather than state [that the person's] DNA is present [in the sample], [they] state [that they] cannot exclude that [person], which means that [they] are seeing [the person's] DNA types present [in] the [sample].
>
> Transcript Vol. III, 23:21-24:5. After listening to the expert's explanation, the trial court asked whether she could "say with any certainty that [Ross's] DNA [was] found on the underwear," and the expert responded that although she could state with certainty only that Ross could not be excluded as a possible source of the DNA she found, the "most common statistic would be that [the DNA could have been contributed to the sample only by] roughly one in every 12,000 people." *Id.* at 29:21-30:14. The trial court appeared to understand the expert's testimony, but regardless, the court did not make any remarks or ask any questions suggesting that it misconstrued the expert's testimony to mean that Ross had been conclusively proven to be the only possible source of the DNA.
>
> {¶ 22} Finally, Ross argues that L.W. "is the only possible source of evidence of sexual conduct," in light of the limitations of the DNA analysis and the results of a physical examination of L.W. completed by a nurse at Dayton Children's Hospital, who did not "note anything abnormal." Transcript Vol. II, 236:13-246:25 and 244:13-245:6. Ross insists that, as a result, his conviction for rape was not supported by sufficient evidence, but even assuming for sake of discussion that L.W.'s testimony was the only evidence of sexual conduct, her testimony, if deemed credible by the trial court, was sufficient of itself to prove that sexual conduct occurred.

*State v. Ross, supra*.

To prove Ross's identity, the State presented (1) the victim's identification of him as the perpetrator, (2) a police officer's encounter with Ross shortly after the crime with identifying clothing (a cast and green gloves), and (3) the DNA evidence that the likelihood someone other than Ross contributed to the DNA sample taken from the victim's underwear was one in 12,000. In other words, there was one piece of direct evidence (the victim's identification and testimony

7

of Ross's conduct) and two pieces of circumstantial evidence (the cast and gloves; the DNA sample). That was certainly sufficient evidence under *Jackson*.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

Because the Second District's decision on Ross's Second Assignment of Error is a reasonable application of *Jackson*, it is entitled to deference under 28 U.S.C. § 2254(d)(1). Ground Two should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be dismissed with prejudice. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 5, 2022.

s/ *Michael R. Merz*<br>United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.